[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 16127
This is a fully contested action for dissolution of marriage and other relief brought to the judicial district of Waterbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Barbara J. Latosh, and the defendant were married at Waterbury, Connecticut on March 13, 1995. The plaintiff has resided continuously in the State of Connecticut for at least one year immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two minor children issue of this marriage Rachel E. Shvartsbeyn, born September 4, 1996, and Jeremy 14. Shvartsbeyn, born February 1, 1999. No other minor children have been born to the plaintiff wife since the date of the marriage of the parties. The state of Connecticut has not contributed to the support of either party.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented the court finds that each party is equally at fault for the breakdown of the marriage.
The plaintiff was born on June 19, 1972. The plaintiff is in good health. She had gallbladder surgery approximately two months ago. The plaintiff is a registered nurse and received her Bachelor's Degree in nursing in 1994. The plaintiff does not currently have medical insurance available to her through her place of employment. It will not be available until May 2001. She is eligible to have dental coverage through her present employment for herself, the defendant, and the two children. Commencing May of 2001, her health insurance for herself will cost $25.00 weekly. The cost for COBRA health benefits for the plaintiff after the parties are divorced will be $205.31 for medical coverage and $25.97 monthly for dental coverage. The plaintiff presently has dental coverage through her own employment.
The plaintiff's present gross weekly income is $534.63. The plaintiff works 24 hours a week. This schedule allows her to be at home to care for the children. She has been employed at her present position for approximately six years. After the birth of each of her two children she remained home to care for them a short period of time and then returned to work. The court finds that in accordance with § 46b-82 that it is desirable for the plaintiff to continue with part time employment until all the children are enrolled in school. The youngest child will enter kindergarten attending for three hours a day on September 1, 2004, at which time the plaintiff can obtain full-time employment. The oldest child enters kindergarten in September 2001 and will be in school CT Page 16128 full-time in September 2002. The plaintiff has a Vanguard IRA with a total value of $3,000.00. Although not shown on her financial affidavit, her sister owes her between $3,500.00 and $3,700.00 as the result of loans that the plaintiff made to her sister. She has life insurance through Liberty Mutual insuring her life in the face amount of $100,000.00. That policy does not have any cash surrender value. The weekly payment for the premium is $2.00. The plaintiff owns a 1997 Honda with a present value of $12,000.00 and no loan balance.
The parties owned property at 44 Beers Street, Watertown, Connecticut prior to purchasing the family home presently owned at 59 Birchwood Terrace, Middlebury, Connecticut. The Beers Street property was purchased in November 1995 for $110,000.00. It was sold on December 10, 1999. The closing statements indicate a total contract price of $163,000.00 with the plaintiff and defendant receiving from the proceeds of the sale $45,316.17. In addition to the $45,316.17 the closing statements show that the plaintiff and the defendant took back a $16,300.00 purchase money mortgage. The $16,300.00 purchase money mortgage, in fact, never existed. The $163,000.00 contract price was inflated by $16,300.00 by showing the purchase money mortgage in that amount. The approximate $45,300.00 received by the plaintiff and defendant from the sale of the Watertown property was distributed as follows: a) $16,000.00 to repay the defendant's father the funds he advanced for the parties to purchase the property at Middlebury, Connecticut, b) the plaintiff received $13,500.00 from the sale of the Watertown home. She used $3,500.00 of that amount for attorney's fees. She also lent her sister $3,000.00. She used approximately $1,500.00 to move into her present apartment. The $3,000.00 that she has in American Bank as shown on her financial affidavit represents the balance of the $13,000.00 that she received and c) approximately $12,500.00 was used to pay off the loan that the plaintiff had on her Honda automobile that she presently owns. The parties have failed to account for the small amount of the remaining balance of the $45,300.00 received.
The parties are in dispute as to the fair market value of the family residence located at 59 Birchwood Terrace, Middlebury, Connecticut. The plaintiff's financial affidavit sets the value of the family home at $255,000.00 and her expert sets the fair market value of the family home at $250,000.00. The defendant's financial affidavit sets the fair market value of the family home at $220,000.00 and his expert sets the fair market value of the family home at $227,000.00. From the evidence presented, the court finds that the fair market value of the home is $235,500.00. It has a mortgage of $198,000.00 and equity of $37,500.00. The plaintiff vacated the family residence on December 21, 1999 and currently resides in Torrington, Connecticut with the two minor children where she rents a duplex. The parties purchased the family home they CT Page 16129 currently own at 59 Birchwood Terrace, Middlebury, Connecticut on September 29, 1999. The total purchase price was $220,000.00. The plaintiff and defendant obtained a $198,000.00 mortgage. The parties needed an additional $20,136.45 to complete the purchase of the Middlebury home. Part of the $28,136.45 came from the defendant's father in the form of a $16,000.00 loan that was repaid after the Beers Street property closing was completed. Some of the money for the down payment came from an inheritance that the plaintiff received from her grandfather in January of 1999. The plaintiff also sold shares of stock that she owned in Pitney-Bowes for $12,600.00 and used those funds towards the purchase of the Middlebury family home. The parties moved into the Middlebury home in September of 1999. After the plaintiff vacated the Middlebury home in December of 1999, the defendant purchased a new hot tub and lawn tractor for the family home.
The defendant was born on January 24, 1972. The defendant is in good health. The defendant is a high school graduate and attended college for two years without obtaining a degree.
The defendant has credit card liabilities totaling $18,490.00. He owns a 1991 Acura with a fair market value of $5,000.00 and a loan balance of $5,200.00. He has $200.00 in a bank account at American Bank. He has a 401K plan with a value of $10,272.76 and a Roth IRA with a value of $2,700.00. Both of those deferred compensation plans were earned during the marriage. Although not shown on his financial affidavit as a separate asset, the defendant purchased a hot tub for $3,000.00 that is located in the back yard of the family home. He also purchased a lawn tractor from Sears for $1,500.00 that is located at the family home. The defendant has a number of credit card debts that are not shown on his financial affidavit.
The defendant's financial affidavit shows a $3.00 weekly payment for his life insurance in the amount of $100,000.00. The correct annual premium of that policy is $135.00.
The parties filed joint tax returns through the calendar year 1998. In April of 2000; the defendant informed the plaintiff that he had filed a separate tax return for the calendar year 1999 and had taken all of the interest and tax deductions as well as claiming one child as a dependent. The defendant received a federal income tax refund for the calendar year of 1999 of $2,434.00 which he used toward paying bills. He claimed all the home mortgage interest for the calendar year 1999 in the amount of $9,945.00 as part of his itemized deductions.
The parties are in dispute as to the defendant's gross weekly income. The court finds that his gross weekly income is $1,240.00. The defendant CT Page 16130 works an average of 62 hours per week in earning that income. His income is based on the commissions that he earns from the sale of automobiles. The child support guidelines only include income from a maximum of 52 hours per week. His average gross weekly income based on $1,240.00 a week gross income and working 62 hours per week is $20.00 per hour. Therefore, in using the maximum of 52 hours per week for support guideline purposes, his gross weekly income is $1,040.00. He has a weekly expense of $65.00 for health insurance for the minor children. Under the child support guidelines the presumptive current support amount is $207.00 weekly. He would also be responsible for 49.36% of unreimbursed medical and qualifying child care costs. The court is entering an order that is substantially within the guidelines and increasing his support obligation from $207.00 per week to $228.00 per week. That then reduces his share of unreimbursed medical and child care contribution to 48%. In the calendar year 2000 the defendant sold a boat for $2,500.00 and a truck for $2,800.00.
The plaintiff claims that in addition to the income that the defendant earns as an automobile salesman, that he has earned income by selling automobiles on the side and that that income should be considered in determining financial orders. The court finds that the plaintiff has failed to prove what amount of profit, if any, the defendant has earned as a result of selling automobiles on the side and therefore the defendant's income from the sale of automobiles other than through his employment is not considered in determining financial orders.
From the evidence presented, the court finds that it is in the best interest of the two children that an order of joint custody enter with primary physical residence with the plaintiff wife. Each party in their claim for relief requested that there be an order of joint custody entered although each party seeks primary physical residence of the children.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81(c) regarding the issues of property division, and has considered the provisions of 46b-56 regarding the issues of custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS A. By Way of Dissolution
CT Page 16131
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. By Way of Custody and Visitation
1. The court enters an order of joint legal custody of the two minor children with primary physical residence with the plaintiff.
2. The defendant is awarded reasonable and flexible visitation rights.
C. By Way of Support
1. The defendant is ordered to pay to the plaintiff support in the amount of $228.00 per week. He is also ordered to pay 48% of unreimbursed medical and qualifying day care costs.
2. The defendant is to maintain health insurance as available through his place of employment for the two minor children.
3. Both the plaintiff and the defendant are ordered to name each child as beneficiary on their $100,000.00 life insurance policy. The children are to be named as equal beneficiaries. When the oldest child reaches 18, the youngest child is to be named as beneficiary of $50,000.00 until the youngest child reaches 18.
D. By Way of property Orders
1. The Christmas tree and ornamentals located at the family home as well as the baby clothes and bassinet and twin bed frame are all awarded to the plaintiff in accordance with the agreement of the parties. All remaining furniture and furnishings at the family home are awarded to the defendant. All furniture and furnishings in the possession of the plaintiff are awarded to the plaintiff.
2. The court orders that the plaintiff pay the liability shown on her financial affidavit and hold the defendant harmless. The court orders that the defendant pay all the liabilities shown on his financial affidavit and hold the plaintiff harmless.
3. The 1997 Honda shown on the plaintiff's financial affidavit is awarded to the plaintiff. The 1991 Acura shown on the defendant's financial affidavit is awarded to the defendant.
4. The $3,500.00 to $3,700.00 loan due to the plaintiff from her sister is awarded to the plaintiff. CT Page 16132
5. The two bank accounts shown on the plaintiff's financial affidavit totaling $3,000.00 are ordered divided as follows: The defendant is to receive one-half ("A) of that $3,000.00 or $1,500.00 whichever amount is greater.
6. The Vanguard IRA shown on the plaintiff's financial affidavit with a balance of $3,000.00 is awarded to the plaintiff.
7. The bank accounts shown on the defendant's financial affidavit totaling $200.00 are awarded to the defendant.
8. The Roth IRA shown on the defendant's financial affidavit that has a value of $2,700.00 is awarded to the defendant.
9. The 401K plan shown on the defendant's financial affidavit is ordered divided equally between the parties. The plaintiff is responsible for preparing the necessary documents to effectuate that transfer.
10. The tractor lawn mower and hot tub located at the family residence are awarded to the defendant.
11. The court orders that the family home be sold. Until the home has been sold, the defendant has the right to exclusive possession of the family residence and he is solely responsible for keeping the mortgage, real estate taxes and home owner's insurance current as well as for any repairs needed to the family residence. Upon the sale of the family residence the net proceeds of the sale after first deducting from the sale price the first mortgage, real estate commission, if any, and normal closing costs are to be divided as follows: a) the first $5,000.00 is to go to the defendant and b) the remaining balance is to be split equally between the parties. The Court retains jurisdiction over any disputes that may arise regarding the sale of the family home.
E. By way of Alimony
1. The defendant is to pay to the plaintiff alimony in the amount of $50.00 weekly.
2. Alimony shall terminate upon the earliest of the following events: a) the death of the plaintiff; b) the death of the defendant; c) the remarriage of the plaintiff; d) September 1, 2004. The youngest child will enter kindergarten on that date and the plaintiff will then be able to obtain full-time employment and will therefore have less need for alimony.
3. The provisions of § 46b-86(a) and § 46b-86(b) are CT Page 16133 applicable. The term of alimony cannot be extended.
4. The plaintiff has the right to claim COBRA benefits for the maximum period allowed by law under the defendant's health insurance and he is ordered to cooperate in the event she so elects. The cost for such coverage is to be paid solely by the plaintiff.
F. By way of Attorney's Fees
1. No attorney's fees are awarded in favor of either party.
G. Miscellaneous Orders
1. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and send it to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns by certified mail/return receipt or registered mail/return receipt within thirty (30) days after such returns have been filed for so long as there is an outstanding alimony order and/or an outstanding support order or any outstanding arrearage regarding either or both orders.
3. An immediate wage execution is authorized for the support and alimony order entered herein.
4. In the event there is any pendente lite arrearage existing as of the date this decision is filed, such arrearage is not merged into the judgment.
5. The defendant has the right to claim all interest and real estate tax payments on the family residence for the calendar year 2000.
AXELROD, J.